UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| VISALUS, INC., | § | CASE NO. 24-42952 |
| | § | (Chapter 11, SubV) |
| | § | |
| DEBTOR. | § | |

## DEBTOR'S CHAPTER 11 SUBCHAPTER V PLAN, DATED MARCH 5, 2025

**I.   INTRODUCTION**

Debtor and Debtor in Possession ViSalus, Inc. (the "Debtor" or "ViSalus") is the debtor and debtor in possession in the above-captioned chapter 11, subchapter V, bankruptcy case (the "Bankruptcy Case"). The Debtor filed a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and elected subchapter V December 5, 2024 (the "Petition Date").

Chapter 11 subchapter V allows the Debtor (and only the Debtor) to propose a plan. This Plan is a reorganization plan proposed by the Debtor. **This document is the Plan**.

This information is provided to help you understand the Plan and to decide whether to vote to accept or reject the Plan or otherwise file an objection. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

The effective date of the Plan (the "Effective Date") will be fifteen business days following the date of entry of the Court order confirming the Plan (the "Plan Confirmation Order") and the satisfaction or waiver by the Debtor of all of the following conditions to the effectiveness of the Plan: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; and

(b) the Plan Confirmation Order shall not be subject to any appeal or rehearing. The Debtor, following the Effective Date, shall be referred to as the "Reorganized Debtor."

All exhibits to this Plan are considered part of this Plan but, in the event of any conflict between this Plan and its exhibits, the terms of this Plan control.

## II.  DISCLOSURES AND BACKGROUND

Bankruptcy Code § 1190(1) requires that a subchapter V plan include: (i) a brief history of the business operations of the Debtor; (ii) a liquidation analysis; and (iii) projections with respect to the ability of the Debtor to make payments under the Plan.

### A.  Description and History of the Debtor's Business

The Debtor is a holding company that, at one time, operated in the United States and internationally through multiple subsidiaries. The Debtor and its subsidiaries ceased substantially all business operations more than four years ago. When the Debtor was actively in business, it marketed nutritional products and dietary supplements.

The Debtor ceased operations because of a class action lawsuit *Wakefield v. ViSalus, Inc.* (D. Oregon, Case No. 3:15-cv-1857-SI). In *Wakefield*, Lori Wakefield filed suit against ViSalus, Inc. under the Telephone Consumer Protection Act ("TCPA"), alleging that ViSalus unlawfully sent her and other class members automated telephone calls that violated the act. See 47 U.S.C. § 227(b)(1).

Wakefield and other class members had signed up with ViSalus to receive phone calls, but during the relevant time period, the FCC amended the applicable rules to render their consent to automated phone calls ineffective.

The complaint in *Wakefield* was filed in 2015. After extensive proceedings in the District Court, the case went to trial in April 2019. After a three-day trial, the jury returned a verdict against ViSalus and a damage award in the amount of $925,220,000 (based on a minimum

statutory damage of $500 per phone call).  After various post-trial motions were denied, ViSalus appealed to the Ninth Circuit Court of Appeals.

In the meantime, the amount of the judgment, the defense costs and the negative publicity associated with the case were seriously impacting ViSalus's business.  To preserve some value of the ongoing business, on or about June 20, 2020, ViSalus sold most of its operating assets to Pruvit Ventures, Inc.

The *Wakefiled* litigation continued nonetheless.  On October 20, 2022, the Ninth Circuit ruled on ViSalus's appeal.  The court rejected most of ViSalus's arguments, but ruled that the nearly $1 billion damages award might be unconstitutionally excessive.  The court remanded for further proceedings consistent with its proceedings.

On April 26, 2024, after post-remand proceedings, the District Court issued an order directing ViSalus to conduct a "class notification and claims processing" procedure.  ViSalus sought bids from claims processing agents and determined that the cost of running the process ordered by the court far exceeded ViSalus's cash on hand.

Because ViSalus cannot afford to run the process as directed by the court and because it has no hope of satisfying any judgment that would arise from the process in any event, ViSalus filed a chapter 11 petition in this Court.  Aside from holders of a small number of disputed claims, ViSalus's creditor body consists of more than 800,000 potential members of the Wakefield class.

The Debtor has no tangible assets.  It owns a variety of subsidiaries (directly and indirectly).  All the subsidiaries have ceased operations, however, and similarly have no tangible assets.  One subsidiary has intellectual property relating to a travel business -- Liv.  In addition to the Liv IP, the Debtor has over $60 million in tax assets in the form of Net Operating Losses (NOLs).

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as they would receive in a chapter 7 bankruptcy liquidation. Here, because the Debtor's only assets are Net Operating Losses and shares in defunct subsidiaries, Creditors would receive nothing in a liquidation.

### C. Ability to Make Plan Payments and Operate Without Further Reorganization

As a condition to Plan confirmation, the Debtor must show it will have sufficient cash over the 3-year life of the Plan to operate its business and make its Plan payments.

Here, once the Debtor obtains a discharge, the Debtor proposes to reactivate a travel-related business and take advantage of its NOLs. To do this, the Debtor will solicit an equity investment sufficient to operate the business.

## III. SUMMARY OF PAYMENTS TO BE MADE UNDER PLAN

The Debtor does not propose to make payments under the Plan.

## IV. CLASSIFICATION AND TREATMENT OF CREDITORS' CLAIMS AND INTERESTS UNDER THE PLAN

### A. General Overview

As required by the Bankruptcy Code, the Plan classifies certain claims and interests in various "classes" according to their right to priority and leaves other types of claims unclassified. Also, as required by the Bankruptcy Code, the Plan states whether each class of claims or interests is impaired or unimpaired and describes the treatment each class will receive.

### B. Unclassified Claims

In accordance with the provisions of Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims are deemed "unclassified." These Claims are not considered impaired under Bankruptcy Code § 1124, and the holders of these Claims do not vote on this Plan

because these Claims are automatically entitled to specific treatment provided for them in the Bankruptcy Code. Accordingly, the Debtor has not placed Administrative Claims and Priority Tax Claims in a Class.

### 1. Administrative Expenses

Administrative expenses (commonly referred to as "Administrative Claims") are claims for costs or expenses of administering the Debtor's chapter 11 case which are allowed under Bankruptcy Code § 507(a)(2). Although Bankruptcy Code § 1129(a)(9)(A) requires that all Administrative Claims be paid on the Plan Effective Date unless a particular claimant agrees to a different treatment, Bankruptcy Code § 1191(e) provides an exception by permitting confirmation of a subchapter V plan that provides for the payment of Administrative Claims "through the plan[.]"

Payment of Administrative Claims that arose in the ordinary course of the Debtor's business will be made when such payment comes due in the ordinary course of the Debtor's business.

Administrative Claims incurred in the course of the administration of the Debtor's bankruptcy case shall be paid as set forth in the chart below. The Debtor's estimated unpaid Administrative Claims on the Effective Date, other than those administrative expenses arising in the Debtor's ordinary course of business are as follows:

| CLAIMANT | ESTIMATED AMOUNT | TREATMENT |
|---|---|---|
| Subchapter V Trustee ("Trustee") | $12,000.00 | Paid in full from post-petition security deposit authorized by the Bankruptcy Court. |
| Lesnick Prince Pappas & Alverson LLP ("LPPA"), bankruptcy counsel to the Debtor. | $125,000.00 | Paid in full from LPPA's retainer once authorized by the Bankruptcy Court. |

| Weycer, Kaplan, Pulaski & Zuber, P.C bankruptcy counsel to the Debtor. | $125,000.00 | Paid in full from Weycer's retainer once authorized by the Bankruptcy Court. |

The Court must approve all professional fees and expenses listed in this chart before they may be paid. The Administrative Claim amounts set forth above simply represent the Debtor's best estimates as to the amount of allowed Administrative Claims in the bankruptcy case. The actual Administrative Claims may be higher or lower.

By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these Administrative Claims, and creditors are not waiving any of their rights to object to the allowance of any of these Administrative Claims. By including the figures described above, the Debtor is not acknowledging the validity of, or consenting to the amount of, any of these Administrative Claims, and the Debtor is not waiving any of its rights to object to the allowance of any of these Administrative Claims. Similarly, professionals who have been employed in the Bankruptcy Case are not being deemed to have agreed that the figures contained herein represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Bankruptcy Court order as such fees and expenses are just estimates provided at the time of the preparation of this Plan.

  **2.**  **Priority Tax Claims**

"Priority Tax Claims" are certain unsecured income, employment and other taxes described by Bankruptcy Code § 507(a)(8). The Bankruptcy Code requires that each holder of such a Priority Tax Claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years after the Petition Date. The Debtor does not anticipate owing any priority tax claims.

### C. Classified Claims and Interests

As required by the Bankruptcy Code, this Plan places Claims and Interests into Classes according to their respective legal rights and interests, including their respective rights to priority. The Debtor lists each Class established under this Plan and states whether each Class is impaired or is unimpaired by the Plan. A Class is "unimpaired" by the Plan if the Plan leaves unaltered the legal, equitable and contractual rights to which the holders of Claims are entitled or the holders of the Interests are entitled, as provided in Bankruptcy Code § 1124. This Section IV.C of the Plan sets forth the treatment that each Class will receive under this Plan.

Pursuant to this Plan, a claim shall be deemed classified in a particular Class only to the extent that the claim qualifies within the description of that Class and shall be deemed classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes. A Claim is classified in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

#### 1. Class 1 – General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code § 507(a). The following chart identifies the Plan's treatment of the class containing all of the Debtor's non-priority general unsecured claims:

| CLASS NO. | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 1 | All general unsecured claims of the Debtor. | Y | General unsecured claims will receive nothing under the Plan. |

2. **Class 2 – Interest Holders**

Interest holders are the parties who held a vested ownership interest (i.e., equity interest or membership interest) in the Debtor as of the bankruptcy Petition Date.[1]

The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS NO. | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 2 | Holders of equity interests in the Debtor | N<br><br>Not entitled to vote. | Class 2 interest holders will retain their rights and interests without impairment. Members of Class 2 are not entitled to receive any cash payments on account of their equity interests under the Plan. |

V. **MEANS OF EFFECTUATING AND IMPLEMENTING THE PLAN**

A. **Funding for the Plan**

The Plan will be funded by outside investment solicited after confirmation of the Plan.

B. **Post-Confirmation Management and Corporate Governance**

The Reorganized Debtor shall continue to be bound by the existing Articles of Incorporation and Bylaws of the Debtor, and such articles of incorporation shall prohibit the issuance of non-voting equity securities as required by Bankruptcy Code § 1123(a)(6) during the life of the Plan. The tenure of each officer and director of the Debtor will be governed by the terms of the existing Articles of Incorporation and Bylaws, as the same may be amended from time to time in accordance with the Plan and applicable state law.

The Debtor's current officers are:

---

[1] Any unexercised prepetition right to convert any debt or other instrument into any equity interest is canceled under the Plan. Any holder of such an unexercised conversion right may have an unsecured claim resulting from the cancellation of such conversion right.

- Nicklas Sarnicola, President

The current members of the Debtor's Board of Directors are:

- Nicklas Sarnicola

- Blake Mallen

### C. Disbursing Agent

Inapplicable.

### D. Allowance and Disallowance of Claims

Because the Debtor is making no distributions under the Plan, the Debtor will not seek allowance or disallowance of any claims.

### E. Distributions to Be Made Pursuant to the Plan

None.

### F. Executory Contracts and Unexpired Leases

The Debtor has no executory contracts.

### G. Vesting of Assets Generally

Except as otherwise provided in the Plan, all property of the Debtor and the Debtor's estate, including all cash held by the Debtor as of the Effective Date, shall vest in the Reorganized Debtor on the Effective Date, free and clear of all claims, liens, encumbrances. From and after the Effective Date, the Reorganized Debtor may conduct its affairs and use, acquire, and dispose of property without supervision by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the order confirming the Plan.

### H. Avoidance Actions, Strong Arm Powers, and Causes of Action

All avoidance actions and strong-arm powers of a trustee under chapter 5 of the Bankruptcy Code, shall irrevocably vest in the Debtor and be transferred in total to the Reorganized Debtor

upon confirmation of the Plan. The deadline for filing avoidance actions under chapter 5 of the Bankruptcy Code shall be as provided in the Bankruptcy Code. The deadline for the Debtor or Reorganized Debtor to file any non-avoidance action shall be the later of (i) the statute of limitations for such cause of action and (ii) two years after the Petition Date. Regardless of whether they are listed on the Debtor's bankruptcy schedules of assets or specified in the Plan, all causes of action owned by the Debtor are expressly preserved and shall vest in the Reorganized Debtor on the Effective Date unless specifically settled with such settlement approved by order of the Bankruptcy Court prior to confirmation of the Plan.

### I. Employment of Professionals by the Reorganized Debtor and Payment of Professional Fees and Expenses After the Effective Date

On and after the Effective Date, the Reorganized Debtor shall have the right to employ and compensate professionals as the Reorganized Debtor determines is appropriate and to compensate any such professionals without the need for any notice or further order of the Bankruptcy Court.

## VI. GENERAL PROVISIONS

### A. Exemption from Transfer Taxes

Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under § 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax. Transfers under the Plan that are exempt from taxes under § 1146(c) of the Bankruptcy Code include all transfers by the Debtor after the commencement of the Bankruptcy Case in contemplation of the Plan but prior to the Effective Date. The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

B.  **Exculpations and Releases**

To the maximum extent permitted by law, neither the Debtor, the Reorganized Debtor, their management, nor any of their professionals employed or retained by any of them, whether or not by Bankruptcy Court order, shall have or incur any liability to any person or entity for any act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein, including the distribution of estate funds.

C.  **Injunctions**

The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, equitable remedy, liability or interest released, discharged, stayed, or terminated pursuant to the Plan.  Except as provided in the Plan or the Plan Confirmation Order, as of the Plan Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability or equitable remedy that was stayed or is discharged or an interest or other right of an equity security holder that is extinguished pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against: (I) (a) the Debtor, or (b) the Reorganized Debtor; or (II) their property; on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does

not comply with or is inconsistent with the provisions of the Plan.  By accepting distributions pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section.  The injunction described in this paragraph (the "Injunction") is applicable to *all* creditors and parties in interest with respect to claims or causes of action arising or existing prior to the Plan Effective Date.  All creditors and parties in interest who are presented with a copy of the Plan Confirmation Order are charged with actual knowledge of the Injunction and with actual knowledge that the Injunction is applicable to said creditor and/or party in interest ("Actual Knowledge"), such that it is impossible for said creditor and/or party in interest to have a good faith belief that the Injunction does not apply to said creditor's and/or party in interest's claim or cause of action.  Accordingly, any creditor and/or party in interest charged with such Actual Knowledge may be held in contempt for violating the Injunction, which contempt proceeding shall include the Reorganized Debtor's reasonable attorneys' fees and costs for enforcing the Injunction.

    **D.**    **Retention of Jurisdiction**

After confirmation, the court retains and may exercise jurisdiction over proceedings concerning: (1) whether Debtor is in material default under this Plan; (2) whether the time for performing any Plan obligation should be extended; (3) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan or in the Disclosure Statement to be filed with the court; (4) whether the case should be dismissed or converted to one under chapter 7; (5) any proceedings to allow or disallow claims or administrative expenses (the court will not review professional fees incurred after the Effective Date, unless otherwise stated in attached exhibits to the Plan or Disclosure Statement); (6) settlements or compromises under Rule 9019; (7) any proceedings under §§ 110, 329, or 362, or regarding sanctions; and (8) any other proceedings, whether or not commenced or contemplated as of the

Effective Date, regarding the implementation, interpretation, or enforcement of this Plan or the administration of the bankruptcy case or estate.

  **E.**  **Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

  **F.**  **Binding Effect**

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

  **G.**  **Headings**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

  **H.**  **Controlling Law**

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Delaware govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**VII.** **EFFECTS OF CONFIRMATION OF PLAN**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code.

The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Dated: March 5, 2025

Respectfully submitted,

*/s/ Christopher E. Prince*
Christopher E. Prince (CA SBN 183553)
LESNICK PRINCE PAPPAS & ALVERSON LLP
315 W. Ninth St., Suite 705
Los Angeles, CA  90015
T: (213) 493-6496
F: (213) 493-6596
E: cprince@lesnickprince.com

*Counsel for Debtor and Debtor in Possession ViSalus, Inc.*

-and-

Jeff Carruth (TX SBN 24001846)
WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
2608 Hibernia, Suite 105
Dallas, TX 75204-2514
T: (713) 341-1158
E: jcarruth@wkpz.com

*Local Counsel for Debtor and Debtor in Possession ViSalus, Inc.*