IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| VISALUS, INC., | § § § § | CASE NO. 24-42952 (Chapter 11, SubV) |
| Debtor. | § | |

**OBJECTION TO DEBTOR'S CHAPTER 11 SUBCHAPTER V PLAN, DATED MARCH 5, 2025 OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**

Creditors Lori Wakefield ("Wakefield") and the certified class she represents (collectively, with Wakefield, the "Class") hold claims against the debtor arising from the civil action *Wakefield v. ViSalus, Inc.*, No. 3:15-cv-01857-SI (D. Or.). In that case, the certified class obtained a largely favorable jury verdict in an action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, relating to ViSalus's sales tactics. The verdict found that ViSalus placed approximately 1.8 million unlawful phone calls to former members of ViSalus's "network marketing" organization, resulting in a judgment not to exceed $925,220,000. Wakefield and the Class object to the proposed plan of reorganization (the "Plan"), which would offer the Class $0. (Dkt. 42).

Importantly, this objection is filed to preserve the parties' rights. The Debtor has moved to extend plan-related deadlines by 60 days to facilitate continued negotiations between the Debtor and the Class (Dkt. 46) (the "Plan Continuation Motion"). As the Debtor's filing describes, the only significant and viable claims against the estate arise from the *Wakefield* litigation, and belong to Wakefield and the Class. Wakefield and the Class support the Plan Continuation Motion to reach a consensual resolution of these claims against the estate. The parties have already held brief, but meaningful discussions, and have laid the groundwork for additional, formal settlement discussions. Wakefield and the Class are optimistic that the requested additional time will be put

to good use in reaching a settlement of their claims against the estate, which, as the Plan Continuation Motion notes, are the only significant claims held by creditors.

Indeed, prior to the Debtor's declaration of bankruptcy, the parties were preparing to provide notice to the Class of the verdict and their right to make a claim against the verdict, and to conduct that claims process. The Debtor stated at the meeting of creditors that part of its motivation in filing for bankruptcy was to find a way to conduct a claims process in a manner that is less costly, but still sufficient to respect the rights of class members. The parties require additional time to work out those details, as well as to ensure that submitted claims in the Class can be validated (and fraudulent ones culled) and for members of the Class to receive something material for their claims. This process was expected to take several weeks even before ViSalus filed for bankruptcy, so some additional time now, to work out a new process under the aegis of the bankruptcy laws, is appropriate. Moreover, this is the best way to ensure that class members receive something for claims that prevailed before a jury. The Court should therefore grant the Plan Continuation Motion and extend the deadlines to allow this settlement process to play out.

However, if the Court is not inclined to permit a negotiated resolution of these claims, the Court should not confirm the proposed Plan for the reasons stated below.

I.  **The proposed Plan is not feasible (11 U.S.C. § 1129(a)(11)).**

First, the proposed Plan is not feasible. *See* 11 U.S.C. § 1129(a)(11).[1] "Feasibility" means that the debtor has shown that the plan is "not likely to be followed by liquidation, or the need for further financial reorganization[.]" *Id.* "Essentially, this confirmation requirement concerns whether the debtor can realistically make the plan work." *In re Patriot Place, Ltd.*, 486 B.R. 773,

---

[1] 11 U.S.C. § 1191(a) establishes that a plan of reorganization filed in a case brought under subchapter V of Chapter 11 may be confirmed only if the plan meets the requirements of 11 U.S.C. § 1129(a) (excepting § 1129(a)(15)).

807 (Bankr. W.D. Tex. 2013). "Though a guarantee of success is not required, the bankruptcy court should be satisfied that the reorganized debtor can stand on its own two feet." *In re Remarkable Healthcare LLC*, 2025 WL 693377, at *16 (Bankr. E.D. Tex. Mar. 4, 2024).

The Plan does not provide such assurances. The proposed Plan here is barebones, calling simply for the solicitation of an unidentified outside equity investment to "reactivate a travel-related business." (Dkt. 42, at 4). But the mere statement that investment will be solicited does not provide any assurances of success; there is no reason to believe that there exists an individual or individuals who would want this intellectual property or who are eager to provide the required equity investment for a company that has been dormant for five years. (*See, e.g.*, Dkt. 31, ¶ 1). To obtain confirmation, the debtor must show "by a preponderance of the evidence that their plan is feasible[.]" *In re Remarkable Healthcare*, 2025 WL 693377, at *16. ViSalus fails to make that showing. Confirmation should be denied on this basis.

**II.    The proposed Plan or reorganization is not made in good faith.**

Next, the Plan is not submitted in good faith. *See* 11 U.S.C. § 1129(a)(3). The bar here is low, but this Plan does not clear it. *See id.* at *14

First, there does not appear to be any evidence of an "honest purpose to reorganize." *Id.* The Debtor has two officers, Blake Mallen and Nicklas Sarnicola, and no employees. Neither Mallen nor Sarnicola appears to have any experience with travel-related businesses. Perhaps the proposed buyer will bring in this expertise, but again, no details or identified purchaser have been provided. And if the debtor *does* intend to bring in someone more knowledgeable about running a travel business, that person should be identified. 11 U.S.C. § 1129(a)(5).

Second, as discussed above, there is no "reasonable hope of success" here. *See In re Remarkable Healthcare*, 2025 WL 693377, at *14.

Third, a "good faith" plan is one that "deal[s] with the creditors in a fundamentally fair manner," *In re Marshall*, 298 B.R. 670, 676 (Bankr. C.D. Cal. 2003), consistent with the "two recognized policies underlying Chapter 11, of preserving going concerns and *maximizing property available to satisfy creditors*." *Bank of Am. Nat'l Tr. & Savs. Ass'n v. 203 N. LaSalle P'ship*, 526 U.S. 434, 453 (1999) (emphasis added). The Plan here is not fair at all. Although ViSalus proposes to continue in a new form as a going concern, the Plan does not propose to make any payments to creditors, much less maximize the property available to satisfy creditors. The Plan is being proposed only for the benefit of equity insiders instead of creditors. At the very least, a portion of any investment into the company, and any revenue earned from whatever new business is created, must be earmarked to pay creditors.

Moreover, the Debtor may well have an existing malpractice claim arising from the *Wakefield* litigation. The judgment in that case was affirmed in part because ViSalus had, through former counsel, Quarles & Brady, waived a potentially meritorious defense to the claims brought by the Class. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1118-20 (9th Cir. 2022). If that waiver was the product of negligence, inattention, or incompetence, then there is value in that claim that may be passed on to the creditors. But the Plan in its current state ignores the claim, without explanation, inconsistent with the purposes of this Chapter 11 proceeding.

Fourth, the Plan is submitted under subchapter V, taking advantage of that subchapter's provision for expedited reorganization, even though the estate would appear not to qualify for that subchapter's protections, *see* Dkt. 17, at 2 (listing total liabilities of nearly $950 million). Indeed, given that the Debtor, by its own admission, has not operated as a business for nearly five years, it is difficult to see why this case was brought under Chapter 11 at all. *See* Dkt. 31, ¶ 1 ("ViSalus,

Inc. ceased substantially all business operations in 2020 . . . "); Dkt. 25, ¶ 9 ("ViSalus no longer operates any business."); Dkt. 18 (listing no income for 3 years pre-petition).

One potential reason for the Chapter 11 filing is for the current officers to remain in control of the company in an attempt to run out the clock on any claim concerning the Debtor's sale of substantially all of its assets to Pruvit Ventures, Inc. in 2020. Control persons of the debtor have been coy (to put it mildly) about the circumstances and structure of that sale, but the information available to creditors suggests potential wrongdoing. The sale itself was consummated amidst vigorous post-verdict negotiations in the matter of *Wakefield v. ViSalus*. No one associated with ViSalus, however, acknowledged the sale in any court proceedings until this bankruptcy case. Indeed, Wakefield and her lawyers were in the dark about the sale at the time it happened.

The 2020 negotiations occurred following the jury's verdict substantially in favor of the Class, but before the Oregon District Court resolved a number of post-trial motions. Indeed, at the request of the parties, resolution of those motions had been stayed to allow for formal mediation to occur. After some settlement progress was made, ViSalus abruptly and without explanation cut off negotiations. Counsel later learned through other means about the sale to Pruvit; ViSalus did not acknowledge the sale in any contemporary court filings, and kept this information from the mediator (a retired federal judge) as well.[2]

After ViSalus cut short negotiations, the district judge denied the company's post-trial motions, prompting an appeal, which was largely resolved against the company, with a petition for a writ of certiorari denied in 2023.

---

[2] The Plan document expresses minor incredulity that "the *Wakefield* litigation continued nonetheless" following the sale. (Dkt. 42, at 3.) A substantial reason the litigation continued along the same course it always had, of course, is that ViSalus hid the fact of the sale from all relevant parties and the District Court.

**OBJECTION TO DEBTOR'S CHAPTER 11 SUBCHAPTER V PLAN, DATED MARCH 5, 2025 OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED - Page 5**
281553582.v2

Back in the district court, the Debtor moved to reduce the statutory damages award and opposed a motion to shift the costs of class notice and claims administration, both on the basis of its purportedly poor financial condition. To support its contentions, ViSalus submitted a declaration from Nick Sarnicola which asserted that ViSalus's lack of revenue since 2020 was due to the COVID-19 pandemic (and an end to large, in-person gatherings). A later declaration simply said the company had not had any revenue since 2021. Neither declaration mentioned the sale. A small handful of documents produced to substantiate Mr. Sarnicola's contentions also contained no evidence of any sale, such as any incoming revenue.

ViSalus finally acknowledged the sale in this bankruptcy case. ViSalus also reports that it has only $20,000 in cash and the soft assets reported do not include a number of assets one might expect a network marketing firm to have, including, for instance, its sales force. Along with Mr. Sarnicola's admission that the 2020 sale included ViSalus's most productive product lines, "volunteer sales force," and "anything that had value," the public record strongly suggests that ViSalus principals approved the sale of ViSalus's core assets in a transaction that brought no money into the company, at a time when the company appears to have been insolvent, or essentially so. And that is essentially how Mr. Sarnicola described the transaction at the creditors' meeting. Mr. Sarnicola averred that the consideration ViSalus "received" was that ViSalus "investors" (he could not say who these were) would make their money back if Pruvit's newly acquired product lines could generate additional sales. (§ 341(a) recording at 19:00-21:00). Declarations filed in the *Wakefield* case seem to indicate that the "investors" who were owed money by ViSalus were company principals who lent the company money at various points. Mr. Sarnicola insisted that only very small amounts ultimately went to investors. (§ 341(a) 20:59). Yet at the same time, no one is owed anything. (§ 341(a) 9:46-9:48). Something does not add up. The structure of the sale

generally is troubling, as it appears to have privileged company insiders over creditors at a time when the company was insolvent. Moreover, ViSalus's erstwhile CEO now holds the title of President at Pruvit.[3]

If ViSalus sold all of its assets for nothing in return, there may be a strong claim that the sale violated any fiduciary duties the control persons, a set which would include the only remaining officers, and any lawyers representing the company in the transaction, owed to the company. And if the sale occurred while the company was insolvent, then it likely violated duties owed to the creditors. The effect of the proposed Plan is to sweep this transaction under the rug. If ViSalus wishes to avoid having this transaction scrutinized, it should at least come up with a plan of reorganization that offers viable creditors something.[4]

## CONCLUSION

The Court should grant the Plan Continuation Motion; however, if the Court denies such requested relief, the Court should reject the proposed Plan for the reasons stated in this Objection and grant such other and further relief as this Court may deem just and proper.

---

[3] Also troubling, the debtor's Subchapter V Status Report lists the date of the transaction as June 20, 2020. (Dkt. 25, ¶ 5.) But Mr. Sarnicola asserted that the reason ViSalus's "investors" weren't able to recoup much of their losses is that the COVID-19 pandemic hit *following* the sale, putting a damper on the kind of person-to-person sales relied upon by "network marketing" firms. (*See* § 341(a) 20:06.) One might wonder whether Mr. Sarnicola was simply misspeaking, but he also averred at the creditors' meeting that sales of ViSalus products fell by about 80 to 85%. (§ 341(a) 20:00-21:00) Yet in the *Wakefield* litigation, Mr. Sarnicola insisted that the debtor's revenue actually hit *zero* in 2020. This would suggest that the "transition," as Mr. Sarnicola put it, of ViSalus's assets and operations to Pruvit predates the June 20, 2020. Again, their story does not add up.

[4] Wakefield and the Class also wish to reserve their right to seek conversion of this proceeding to Chapter 7 should the Debtor not come up with an acceptable Plan. The conversation and appointment of a trustee would enable someone other than the debtor-in-possession to investigate not only this claim, but also any potential malpractice claims ViSalus might have as a result of the *Wakefield* litigation. *See In re FRGR Managing Member LLC*, 419 B.R. 576, 582 (Bankr. S.D.N.Y. 2009) (noting that where a debtor's principal assets are legal claims, an independent fiduciary should be appointed to probe those claims).

**OBJECTION TO DEBTOR'S CHAPTER 11 SUBCHAPTER V PLAN, DATED MARCH 5, 2025 OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED - Page 7**
281553582.v2

Dated: April 4, 2025

Respectfully submitted,

/s/ *Audrey L. Hornisher*
Audrey L. Hornisher (TX Bar No. 24094369)
**CLARK HILL PLC**
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 651-2056
(214) 651-4330 (fax)
ahornisher@clarkhill.com

and

Kevin H. Morse (IL Bar No. 06297244)
*Admitted Pro Hac Vice*
**CLARK HILL PLC**
130 E. Randolph Street, Suite 3900
Chicago, IL 60601
(312) 985-5556
(312) 985-5999 (fax)
kmorse@clarkhill.com

*Attorneys for Lori Wakefield, individually and on behalf of all others similarly situated*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all parties that are registered to receive electronic notices via electronic notification pursuant to the ECF procedures in this District on the 4th day of April, 2025 as identified on the service listed attached hereto.

/s/ *Audrey L. Hornisher*

## SERVICE LIST

*Served via CM/ECF:*

| | |
|---|---|
| Christopher E. Prince<br>Lesnick Prince Pappas & Alverson LLP<br>315 W. Ninth Street, Suite 705<br>Los Angeles, CA 90015<br>cprince@lesnickprince.com<br>*Attorneys for Debtor* | Jeff Carruth<br>Weycer, Kaplan, Pulaski & Zuber, P.C.<br>2608 Hibernia, Suite 105<br>Dallas, TX 75204<br>jcarruth@wkpz.com<br>*Attorneys for Debtor* |
| Katharine Clark<br>Thompson Coburn LLP<br>2100 Ross Avenue, Suite 600<br>Dallas, TX 75201<br>kclark@thompsoncoburn.com<br>*Subchapter V Trustee* | Marcus Salitore<br>John M. Vardeman<br>Office of the U.S. Trustee<br>110 N. College Street, Suite 300<br>Tyler, TX 75702<br>marc.f.salitore@usdoj.gov<br>john.m.vardeman@usdoj.gov |