**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| VISALUS, INC., | § | **CASE NO. 24-42952** |
| | § | **(Chapter 11, SubV)** |
| | § | |
| Debtor. | § | |

**RENEWED OBJECTION OF LORI WAKEFIELD,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED
TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION**

1.  Creditors Lori Wakefield ("Wakefield") and the certified class she represents (collectively, with Wakefield, the "Class") hold claims against the debtor arising from the civil action *Wakefield v. ViSalus, Inc.*, No. 3:15-cv-01857-SI (D. Or.). In that case, the certified class obtained a largely favorable jury verdict in an action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, relating to ViSalus's sales tactics. The verdict found that ViSalus placed approximately 1.8 million unlawful phone calls to former members of ViSalus's "network marketing" organization, resulting in a judgment not to exceed $925,220,000. Wakefield and the Class object to the proposed plan of reorganization, which would offer the Class $0. Dkt. 42.

2.  The Class's objection here rests on the fact that the plan does not offer a serious proposal for reorganizing the business and does not offer creditors anything at all. The Debtor's business has not generated revenue for several years and has far more debt than is permitted to take advantage of the streamlined procedures in a subchapter V case under chapter 11 of Title 11 of the United State Bankruptcy Code. Indeed, based on the Debtor's representations in this case, this petition has no business proceeding under subchapter V at all. (*See* Dkt. 17, at 2 (listing total

**RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION — Page 1**

liabilities of nearly $950 million).) Indeed, given that the Debtor, by its own admission, has not operated as a business for nearly five years. (*See* Dkt. 31, ¶ 1 ("ViSalus, Inc. ceased substantially all business operations in 2020 … ."); Dkt. 25, ¶ 9 ("ViSalus no longer operates any business."); Dkt. 18 (listing no income for 3 years pre-petition).) Moreover, the Debtor claims to have a single asset, yet does not appear inclined to monetize it for the benefit of the creditors. In fact, as it stands, the plan relies on monetizing that asset for the benefit of the Debtor, and perhaps the entity that purchased most of the Debtor's useful assets in 2020. This Plan should not be confirmed, and, as explained in Wakefield's separate Motion to Convert filed contemporaneously with this Objection, this case should be converted to a chapter 7 proceeding.

## BACKGROUND

3.    On December 12, 2024, the Debtor commenced this chapter 11, subchapter V case by filing a voluntary petition for relief under chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Texas (the "Court").

4.    Katharine Battaia Clark is the Subchapter V Trustee.

5.    The Debtor once ran an apparently successful "network marketing" business, which sold weight loss supplements in several countries. *See Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 592 (E.D. Mich. 2015) (detailing debtor's operations and finding that "[t]he Court believes that the Plaintiffs' allegations … plausibly allege that the ViSalus Program is a pyramid scheme"). According to representations made by the Debtor's representatives in this proceeding, however, the Debtor has not done any business since at least 2020. (Dkt. 31.) The Debtor lists that its only remaining assets are net operating losses ("NOLs"), and a travel-related IP. The Debtor does not contend that it has any contingent or unliquidated claims that might be pursued.

**RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION — Page 2**

6.  The Debtor's bankruptcy schedules report that the Debtor has total liabilities of approximately $949 million, and cash on hand of $20,000. The Debtor's Statement of Financial Affairs admits that the Debtor has no gross revenue from its business and has not received regular income since at least 2022. (Dkts. 17-18.)

7.  Wakefield and the Class sued the Debtor in federal district court in Oregon in 2015, related to sales calls made by the Debtor and its agents. The case went to trial in 2019, and a jury found that the Debtor violated federal law on approximately 1.85 million occasions. A verdict was entered in an amount not to exceed $925,218,000, with an addition $2,000 for Wakefield herself. The claims of Wakefield and the Class are the only substantial, non-tax claims on the Estate.

8.  On March 5, the Debtor filed a proposed plan of reorganization ("Plan"). (Dkt. 42.) The Plan returns nothing to any creditor but proposes to solicit an investor to make use of the previously unused existing travel-related IP.

## LEGAL STANDARD

9.  "To obtain confirmation of the Plan, the Debtors must demonstrate that the Plan satisfies the [relevant] provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence." *In re Idearc Inc.*, 423 B.R. 138, 159 (Bankr. N.D. Tex. 2009). 11 U.S.C. § 1191(a) establishes that a plan of reorganization filed in a case brought under subchapter V of chapter 11 may be confirmed only if the plan meets the requirements of 11 U.S.C. § 1129(a), except for § 1129(a)(15). These requirements include that the proposed plan of reorganization be feasible, 11 U.S.C. § 1129(a), and that the plan be proposed in good faith, 11 U.S.C. § 1129(a)(3).

## ARGUMENT

### a. The proposed plan of reorganization is not feasible.

10. The proposed Plan is not feasible. *See* 11 U.S.C. § 1129(a)(11). "Feasibility" means that the debtor has shown that the plan is "not likely to be followed by the liquidation, or the need for further financial reorganization." *Id*. "Essentially, this confirmation requirement concerns whether the debtor can realistically make the plan work." *In re Patriot Place, Ltd.*, 486 B.R. 773, 807 (Bankr. W.D. Tex. 2013). "Though a guarantee of success is not required, the bankruptcy court should be satisfied that the reorganized debtor can stand on its own two feet." *In re Remarkable Healthcare LLC*, No. 24-40611, 2025 WL 693377, at *16 (Bankr. E.D. Tex. Mar. 4, 2024).

11. The Plan does not provide such assurances. The proposed Plan here is barebones, calling simply for the solicitation of an outside equity investment to "reactivate" a travel-related business. (Dkt. 42, at 4, 8.) As an initial matter, there is little evidence that the Debtor ever operated a travel-related business that could be "reactivated". The decision to sell nearly all assets in 2020 to Pruvit has left the Debtor with essentially just one intangible asset that could conceivably be used to rehabilitate: the trademark for "Vi Travel." The content of the trademark itself suggests it is related to travel, but nothing filed in this case or anything that turned up in discovery in the 10-year-old *Wakefield* litigation suggests the Debtor ever ran a travel-related business. (*See* Dkt. 55 (asserting that Debtor ran a health supplements business).) Nor does it appear from the public record that Debtor even ran a travel-related business. Of course, securing that investment is only the first step. That investment must then be put to use "running a travel business" that can get on its feet. However, the track record for the potential management of the travel-related business is not well received. Notably, these individuals are the same people that ran the Debtor's company

**RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION — Page 4**

whose revenues declined from several hundred million to zero in just a few short years. There individuals would be operating in an apparently unfamiliar industry, and one which is not currently on the rise. Accordingly, there is no basis to believe this business will get on its feet.

12. The mere statement that investment will be solicited does not provide any assurances of success to support the confirmation of the Plan; there is no reason to believe that there exists an individual or individuals who would want this intellectual property or who are eager to provide the required equity investment. As articulated by the Fifth Circuit, "[m]any courts have found debtors' statements that funding is forthcoming to be insufficient in the absence of concrete evidence that the contributors are willing to give and capable of giving." *In re Save Our Springs (S.O.S.) Alliance, Inc.*, 632 F.3d 168, 173 n.8 (5th Cir. 2011). Furthermore, "speculation" that the necessary capital can be raised to restart a business "is insufficient." *Id.* at 173. It is not clear that what the Plan offers here even rises to the level of speculation. To obtain confirmation, the Debtor must show "by a preponderance of the evidence" that its Plan is feasible. *In re Remarkable Healthcare*, 2025 WL 693377, at *16. ViSalus fails to make that showing. Confirmation should be denied on this basis.

    **b.**    **The proposed plan of reorganization is not made in good faith.**

13. The Plan is not submitted in good faith. *See* 11 U.S.C. § 1129(a)(3). The bar here is low, but this Plan does not clear it. *In re Remarkable Healthcare*, 2025 WL 693377, at *14

14. First, there does not appear to be any evidence of an "honest purpose to reorganize." *Id.* The Debtor has two officers, Blake Mallen and Nicklas Sarnicola, and no employees. Notably, "A lack of any employees suggests that there is no business to reorganize and thus no good faith reason for being in chapter 11." *In re Traxcell Techs., LLC*, 657 B.R. 453, 460 (Bankr. W.D. Tex.

**RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION — Page 5**

2024). Not only are there no employees to protect, but as noted above, neither Mallen nor Sarnicola appear to have any experience with travel-related businesses. Because there is no business to reorganize, and the only remaining principals propose to "restart" what is essentially a completely new business, the bankruptcy filing here does not evidence an honest purpose to reorganize.

15. Second, as discussed above, there is no "reasonable hope of success" in this case. *See In re Remarkable Healthcare*, 2025 WL 693377, at \*14.

16. Third, a "good faith" plan is one that "deal[s] with the creditors in a fundamentally fair manner," *In re Marshall*, 298 B.R. 670, 676 (Bankr. C.D. Cal. 2003), consistent with the "two recognized policies underlying Chapter 11, of preserving going concerns and *maximizing property available to satisfy creditors*." *Bank of Am. Nat'l Tr. & Savings Ass'n v. 203 North LaSalle P'ship*, 526 U.S. 434, 453 (1999) (emphasis added). The Plan here is not fair at all. Although ViSalus proposes to continue in a new form as a going concern, the Plan does not propose to make any payments to creditors, much less maximize the property available to satisfy creditors. At the very least, at least a portion of any investment into the company, and any revenue earned from whatever new business is created, must be earmarked to pay creditors.

17. The choice of a chapter 11 proceeding itself is evidence of bad faith here. The Debtor may well have several legal claims it can pursue in order to raise funds for creditors. These claims were not scheduled, perhaps in significant part because at least some of these claims would need to be brought against the Debtor's control persons. *See In re MCorp Fin., Inc.*, 160 B.R. 941,

**RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION — Page 6**

961 (Bankr. S.D. Tex. 1993) ("the faith of the proposal is ascertained from the objective consequences of the plan, not the moral consciousness of the various proponents").[1]

18. The record suggests that the Debtor has at least two types of viable causes of action. First, the Debtor has claims against former officers and directors concerning their operation of the company. The 2020 sale to Pruvit, Inc., for instance, raises several concerning questions. The Debtor kept curiously quiet about the sale in the *Wakefield* litigation, consummating the transaction during active settlement negotiations without disclosing it to Wakefield, or even to the Oregon district court. Indeed, when pressed by the Oregon district court to substantiate its pleas of poverty to avoid paying court-order claims and notice costs, ViSalus submitted documents in that litigation which conveniently omitted any reference to the sale. For instance, ViSalus submitted a declaration from Nick Sarnicola which asserted that ViSalus's lack of revenue since 2020 was due to the Covid-19 pandemic (and an end to large, in-person gatherings). A later declaration simply said the company had not had any revenue since 2021. Neither declaration mentioned the sale. A small handful of documents produced to substantiate Mr. Sarnicola's contentions also contained no evidence of any sale, such as any incoming revenue. *See Wakefield*, No. 3:15-cv-01857-SI, Dkts. 460-2 & 476-2.

19. ViSalus finally, and for the first time, acknowledged the sale in this proceeding, but what it has disclosed here only serves to raise even more questions. Mr. Sarnicola's admitted at the 341(a) meeting of creditors that the 2020 sale included ViSalus's most productive product lines, "volunteer sales force," and "anything that had value." In exchange, the consideration ViSalus

---

[1] The Debtor publicly represented that the motivation for this approach was to facilitate a resolution of the *Wakefield* class's claim on the estate. But while a subchapter V proceeding potentially opened up ways to resolve that claim, the Debtor was not truly serious about settlement.

**RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION — Page 7**

"received" was that ViSalus "investors" (he could not say who these were) would make their money back if Pruvit's newly acquired product lines could generate additional sales. (341(a) recording at 19:00-21:00) Debtors schedule of assets (Dkt. 17, at 20, 25) and Declarations filed in the *Wakefield* case make clear that the "investors" who were owed money by ViSalus were company principals who lent the company money at various points. *See Wakefield*, No. 3:15-cv-01857-SI, Dkts. 460-2 & 476-2. This testimony and evidence strongly suggest that the ViSalus principals approved the sale of ViSalus's core assets in a transaction that brought no money into the company, instead privileging company insiders, at a time when the company appears to have been insolvent, or essentially so. Mr. Sarnicola insisted that only very small amounts ultimately went to investors. (341(a) recording at 20:59.) Yet at the same time, no one is owed anything. (*Id.* at 9:24-9:38.) Something does not add up. Moreover, ViSalus's erstwhile CEO now holds the title of President at Pruvit though it is unclear, what, if anything, he does at the company.[2]

20. Moreover, the Debtor may well have an existing malpractice claim arising from the *Wakefield* litigation. The class claims in that case arose under the Telephone Consumer Protection Act, 47 U.S.C. § 227. At issue in nearly every large TCPA case is the issue of consent. In the case of the *Wakefield* litigation, the class contended that the appropriate framework for determining whether class members had provided consent was an FCC rule, which went into effect in 2013, which required consent both (1) to be called, and also (2) to be called using an artificial or

---

[2] Also troubling, the debtor's Subchapter V Status Report lists the date of the transaction as June 20, 2020. (Dkt. 25, ¶ 5.) But Mr. Sarnicola asserted that the reason ViSalus's "investors" weren't able to recoup much of their losses is that the COVID-19 pandemic hit *following* the sale, putting a damper on the kind of person-to-person sales relied upon by "network marketing" firms. (*See* 341(a) recording at 20:06.) One might wonder whether Mr. Sarnicola was simply misspeaking, but he also averred at the creditors' meeting that sales of ViSalus products fell by about 80 to 85%. (*Id.* at 20:00-21:00.) Yet in the *Wakefield* litigation, Mr. Sarnicola insisted that the debtor's revenue actually hit *zero* in 2020. This would suggest that the "transition," as Mr. Sarnicola put it, of ViSalus's assets and operations to Pruvit predates June 20, 2020. Again, their story doesn't add up.

**RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION — Page 8**

prerecorded voice. The FCC had acknowledged, however, that its rule was ambiguous as applied to consents received before the 2013 rule went into effect. (Prior to 2013, consent to be called generally provided a defense to TCPA claims, without the need for consent to certain calling technology.) The FCC therefore granted several waivers of the 2013 rule. On ViSalus's behalf, Quarles & Brady applied for *and received* a similar waiver. But they had inexplicably insisted that they were not raising a consent defense to the *Wakefield* class's claims and therefore were unable to invoke the waiver following the trial. The judgment was affirmed in part on the basis of that waiver. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1118-20 (9th Cir. 2022) (discussing history of FCC rule and *Wakefield* litigation). If that waiver was the product of negligence, inattention, or incompetence, then there should be value in that claim that may be passed on to the creditors. Wakefield notes, however, that while the Debtor's listing of the 20 largest creditors includes numerous law firms (the company may have had a habit of not paying its legal bills), Quarles & Brady is not among them. Is that because the Debtor has already settled out the claim? Did it do so in a way, like the Pruvit sale, that privileged insiders without providing any value to the company?

21. If ViSalus compromised or sold all of its assets for nothing in return, there may be a strong claim that the sale violated any fiduciary duties the control persons, a set which would include the only remaining officers, and any lawyers representing the company in the transaction, owed to the company. If these transactions occurred while the company was insolvent, then it likely violated duties owed to the creditors. The effect of the proposed Plan is to sweep these transactions under the rug, all while providing Creditors with nothing. Additionally, one might also

**RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION — Page 9**

naturally wonder what sorts of decisions were made that led to a company, which quite recently reported over $600 million in revenue in a single year, bottoming out within a decade.[3]

22. These are serious questions of interest to every creditor. But the choice of a chapter 11, subchapter V proceeding means that we are unlikely to get any answers. A good faith attempt to reorganize the company would at least explain why these are not sources of value to creditors. Here, the Debtor has neither provided a good faith attempt to reorganize nor proposed relief for its creditors.

## CONCLUSION

Wherefore, Wakefield and the Class respectfully request that the Court enter an order denying confirmation of the Plan and granting such other and further relief as this Court deems appropriate under the circumstances.

Dated: June 4, 2025

Respectfully submitted,

*/s/ Kevin H. Morse*
Kevin H. Morse (IL Bar No. 06297244)
*Admitted Pro Hac Vice*
**CLARK HILL PLC**
130 E. Randolph Street, Suite 3900
Chicago, IL 60601
(312) 985-5556
(312) 985-5999 (fax)
kmorse@clarkhill.com

and

---

[3] Our concerns also are raised given the relationship between the Debtor and Pruvit. Pruvit Ventures is owned by LaCore Enterprises, LLC. ViSalus, Pruvit, and LaCore all are headquartered at 901 Sam Rayburn Highway in Melissa, Texas. LaCore Enterprises owns several "network marketing" companies, along with a suite of companies that provide services to LaCore's network marketing subsidiaries. And these LaCore entities appear to sing from the same hymnal when seeking to avoid legal liability: once someone gets close to making them pay, transfer all of a company's valuable assets to a different LaCore entity, and declare bankruptcy, frustrating any attempts to collect. *See, e.g.*, *Dalton v. Innov8tive Nutrition, Inc.*, No. 3:24-cv-0687-N, 2025 WL 391737 (N.D. Tex. Feb. 4, 2025); *Youngevity, Int'l v. Innov8tive Nutrition, Inc.*, No. 3:22-cv-00721-LL-AHG, Dkt. 38 (S.D. Cal Oct. 7, 2024). At the very least, this is further evidence of a lack of an honest purpose to reorganize.

**RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION — Page 10**

        Audrey L. Hornisher (TX Bar No. 24094369)
        **CLARK HILL PLC**
        901 Main Street, Suite 6000
        Dallas, Texas 75202
        (214) 651-2056
        (214) 651-4330 (fax)
        ahornisher@clarkhill.com

        *Attorneys for Lori Wakefield, individually and*
        *on behalf of all others similarly situated*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all parties that are registered to receive electronic notices via electronic notification pursuant to the ECF procedures in this District on the 4th day of June, 2025, as identified on the service list attached hereto.

        */s/ Kevin H. Morse*
        Kevin H. Morse

**RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION — Page 11**

## SERVICE LIST

*Served via CM/ECF:*

Christopher E. Prince
Lesnick Prince Pappas & Alverson LLP
315 W. Ninth Street, Suite 705
Los Angeles, CA 90015
cprince@lesnickprince.com
*Attorneys for Debtor*

Jeff Carruth
Weycer, Kaplan, Pulaski & Zuber, P.C.
2608 Hibernia, Suite 105
Dallas, TX 75204
jcarruth@wkpz.com
*Attorneys for Debtor*

Katharine Clark
Thompson Coburn LLP
2100 Ross Avenue, Suite 600
Dallas, TX 75201
kclark@thompsoncoburn.com
*Subchapter V Trustee*

Marcus Salitore
John M. Vardeman
Office of the U.S. Trustee
110 N. College Street, Suite 300
Tyler, TX 75702
marc.f.salitore@usdoj.gov
john.m.vardeman@usdoj.gov