IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| VISALUS, INC., | § | CASE NO. 24-42952 |
| | § | (Chapter 11, SubV) |
| | § | |
| Debtor. | § | |

**SUPPLEMENT TO THE RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION**

Creditor Lori Wakefield, on her own behalf and on behalf of a certified class, files this supplement to her previous objection to the Debtor's Amended Plan of Reorganization:

1.  Debtor's initial Plan of Reorganization, (Dkt. 42), proposed merely to "reactivate" a travel business. Wakefield's original Objection to that Plan, (Dkt. 62), observed that the Plan provided no details about how this business would be run, no indication that anyone involved with the Debtor had experience running a "travel-related business," and no assurances of success, flunking the feasibility requirement for plan confirmation. *See* 11 U.S.C. § 1129(a)(11). There was no evidence that the Plan offered a "reasonable possibility of success." *In re Pearl Resources LLC*, 622 B.R. 236, 263 (Bankr. S.D. Tex. 2020). Moreover, the Plan proposed to abandon potentially lucrative claims held by the Debtor, relating in particular to the pre-petition sale of most of the Debtor's assets to Pruvit, Inc., and to the settlement of a malpractice claim in 2020. Combined with the meager details on offer regarding the "reactivated" business, the Plan also flunked the "good faith" requirement, 11 U.S.C. § 1129(a)(3), because there was no "fact-based hope of either preserving a going concern or maximizing property available to satisfy creditors." *In re Multiut Corp.*, 449 B.R. 323, 341 (Bankr. N.D. Ill. 2011) (internal quotations omitted). Moreover, for aught that appears, the choice of a subchapter V proceeding was merely to ensure that the Debtor (or,

**SUPPLEMENT TO THE RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION — Page 1**

truthfully, its insiders) remained in possession of the estate in order to extinguish claims the Debtor might hold against current and former control persons. (Dkt. 62, at 5-6.)

2. This new "Amended" Plan, (Dkt. 74), adds new details, but still falls well short of demonstrating feasibility, maximizing the property available to creditors, or that the Plan is in the best interest of creditors.

3. The Amended Plan contains essentially two changes. First, concerning the "reactivated" travel-related business, the Amended Plan proposes to solicit an initial $50,000 investment to pay for administrative expenses related to Plan implementation and the running of the business, and to give a Post-Effective Date Trust a 25% stake in the reactivated business. Second, the Amended Plan permits the Trust to liquidate other assets held by the Debtor. Specifically, the Trust may pursue claims on behalf of the Debtor, with any proceeds inuring to the benefit of creditors. We explain in turn why these changes still do not render the Amended Plan confirmable.

4. First, Debtor still fails to offer evidence that its plan to reactivate a travel business is feasible. On its face the Amended Plan contains glaring omissions. There is still no information about who will run the business, *see* 11 U.S.C. § 1129(a)(5), what exactly it will do, and how it will make enough money to remain a going concern.[1] A confirmable plan will have "thorough and accurate financial projections." *Matter of Edgewood Food Mart, Inc.*, 666 B.R. 418, 437 (Bankr. N.D. Ga. 2024). These "[p]rojections should show anticipated earnings and expenses, [and] calculate projected disposable income[.]" *In re Premier Glass Servs., LLC*, 664 B.R. 465, 474 (Bankr. N.D. Ill. 2024).

---

[1] Nor is it reasonable to force the Wakefield creditors to become unwilling business partners with ViSalus's proposed reactivated travel-related pyramid scheme. *See Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 592 (E.D. Mich. 2015) (detailing debtor's operations and finding that "[t]he Court believes that the Plaintiffs' allegations … plausibly allege that the ViSalus Program is a pyramid scheme").

**SUPPLEMENT TO THE RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION — Page 2**

5. Here, all ViSalus has provided is an estimate that the reactivated business will generate $0 in disposable income. (Dkt. 74 ¶ 2.4.) The only explanation provided for this estimate is that it is reasonable given "the nature of the Assets and the risks involved in monetizing them." (*Id.*) To put it mildly, this does not inspire confidence. A business that is not projected to make any money is not one that can "stand on its own feet" following reorganization.

6. It is particularly unreasonable to omit such projections here because, as the Debtor's representative, Nicklas Sarnicola, testified in his deposition, the proposed reorganized business will operate along the lines of Liv Global, a travel experiences business operated between 2018 and 2020 by the Debtor. (*See* Sarnicola Deposition ("Sarnicola Dep."), attached as **Exhibit 1**.) The Debtor therefore already has some understanding of the costs of running such a business, and of the potential revenues. These should be included in the Amended Plan of Reorganization.

7. Moreover, as before, the success of the reorganized business hinges on the solicitation of an equity investment. Again, no evidence or information is provided about how the Debtor would go about soliciting this investment, what size the investment would be, and how that would impact the operations of the reorganized business. Section 1129(a)(5) further requires identification of anyone serving as a "director, officer, or voting trustee" of the reorganized business. Any investor will therefore need to be identified before confirmation.

8. Much of the feasibility of the Amended Plan rests on the Debtor's ability to solicit an investment large enough to restart the business. And the likelihood of such an investment is tied to the value of the Debtor's existing Net Operating Losses (that is, the "carrot" in this scenario is the opportunity to use those NOLs to write off approximately $20 million on the investor's taxes). But the only estimate Debtor has provided of the "sale" value of these NOLs is an estimate by Mr. Sarnicola, based on a few conversations he has had, that they might be worth between $7 and $10

million. (Sarnicola Dep. 177:7-11.) This inexpert evaluation is no basis to conclude that this Plan is feasible.

9. Mr. Sarnicola's deposition testimony also shows that other omissions in the Plan are not by accident. His responses to questions about this Amended Plan make it clear that the Debtor has done little, if anything, in the way of preparing for reorganization. The Debtor has not begun to search for an investor, and the "third party" who will provide the $50,000 cash infusion necessary to pay interim administrative expenses is Pruvit Ventures. Put simply, Debtor has not done the work necessary to show that its Amended Plan of Reorganization is feasible. (And Pruvit Ventures, it is worth noting, is reportedly in the process of being acquired by Herbalife. *See Herbalife to Acquire Assets of Pro2col Health and Pruvit Ventures, and Controlling Ownership Interest in Link BioSciences*, Herbalife (Mar. 12, 2025), https://perma.cc/X6BK-GJ3U (last accessed July 10, 2025). So it is unclear what it would mean for "Pruvit Ventures" to provide any investment into the reorganized company.)

10. Second, the Amended Plan contains no demonstration that the Post-Effective Date Trust is in the best interests of creditors.

11. As an initial matter, the Amended Plan does not appear to maximize the property available to creditors. The Amended Plan proposes that the Trust will have a 25% stake in the reorganized Liv Global, which it says, will allow the Trust "to share in the upside of a potential future equity investment." (Dkt. 74 ¶ 2.4) There are, at least, two problems with this. First, without the required financial projections, it is impossible to tell whether the meager 25% stake maximizes the value available to creditors. *Cf.* 11 U.S.C. § 1190(2) ("A plan filed under this subchapter … shall provide for the submission of *all* or such portion of the future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the

**SUPPLEMENT TO THE RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION — Page 4**

plan") (emphasis added). Moreover, given the size of the debt held by the Wakefield Creditor Class, the Trust should receive its share of Liv Global's revenues for five years instead of three. *See* 11 U.S.C. § 1191(c)(2) (court may fix a period of up to 5 years within which all of the projected disposable income will be distributed to creditors).

12. The second issue is that it is not clear whether creditors are to receive a share of any investment into the reorganized company. The Amended Plan provides that creditors may share in the "upside" of any investment. (Dkt. 74 ¶ 2.4.) Mr. Sarnicola testified that it was his belief that creditors would receive a 25% share of any investment. (Sarnicola Dep. 177:15-17.) The Amended Plan should be confirmed only on the understanding that the Trust will receive a portion of the equity investment for future distribution to creditors.

13. Moreover, the Amended Plan lacks critical details of the Trust, most specifically how the Trustee will be selected, who they are, whether they will have a pre-existing relationship with the Debtor or its insiders, or any other relevant information. This information is especially critical because one of the main functions of this Trust will be to pursue "Transferred Causes of Action." The Debtor insists any such claims are meritless, but the one benefit of an independent trustee is an impartial evaluation of these claims.

14. As Wakefield previously explained, it appears the company should hold at least two claims that could be pursued by an independent trustee: a claim related to the sale of the company's assets in 2020, and a claim related to the settlement of a malpractice claim shortly thereafter. The Debtor now acknowledges that both the sale and the settlement of the malpractice claim were hidden from the district court overseeing the *Wakefield* litigation in Oregon. The Debtor also acknowledges that the malpractice claim was settled with the interests of Pruvit Ventures in mind,

(Sarnicola Dep. 112:23-113:5), and that the value of the settlement was not reflective of what ViSalus owed to the *Wakefield* class, but of other liabilities (*Id.* 114:14-115:8).

15. In other words, every time more information has come to light regarding these claims, Wakefield's estimation of their value has increased. But these claims will only be fully ventilated if there is a truly independent trustee. At this stage, the Amended Plan does not guarantee that, and absent that guarantee, it cannot be said to be in the best interests of the creditors.

16. Next, the Amended Plan suggests (Dkt. 74 ¶ 2.5) that the claims of small-dollar creditors can be extinguished without notice if the trustee concludes that such is appropriate. The provision is somewhat ambiguous in these circumstances, in which the largest creditor is a certified class. The Class as a collective holds a large claim, but it is made up of individuals many of whom hold small-dollar claims against the Debtor. If the effect of ¶ 2.5 is to eliminate the need to provide the best notice practicable to absent class members, then this aspect of the Amended Plan violates due process. *See In re Partsearch Techs., Inc.*, 453 B.R. 84, 97-98 (Bankr. S.D.N.Y. 2011). Absent class member claims cannot be extinguished without reasonable attempts at individual notice, and the Plan cannot be confirmed if that is what it attempts to do.

17. Finally, the Amended Plan materially differs from the previous proposed Plan of Liquidation. Wakefield has endeavored to evaluate the Plan and its effects in the limited amount of time provided, but she is entitled to at least 28 days to do so, Fed. R. Bankr. P. 2002, and reserves her right to raise additional objections to the Plan within that 28-day evaluation period.

Dated: July 10, 2025

Respectfully submitted,

*/s/ Kevin H. Morse*
Kevin H. Morse (IL Bar No. 06297244)
*Admitted Pro Hac Vice*
**CLARK HILL PLC**
130 E. Randolph Street, Suite 3900
Chicago, IL 60601
(312) 985-5556 / (312) 985-5999 (fax)
kmorse@clarkhill.com

**SUPPLEMENT TO THE RENEWED OBJECTION OF LORI WAKEFIELD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION — Page 6**

    and

    Audrey L. Hornisher (TX Bar No. 24094369)
    **CLARK HILL PLC**
    901 Main Street, Suite 6000
    Dallas, TX 75202
    (214) 651-2056 / (214) 651-4330 (fax)
    ahornisher@clarkhill.com

    and

    Patrick Ntchobo (CA Bar No. 332593)
    *Admitted Pro Hac Vice*
    **EDELSON PC**
    150 California Street, 18th Floor
    San Francisco, CA 94111
    T:(415) 212-9300
    F: (415) 373-9435
    pntchobo@edelson.com

    *Attorneys for Lori Wakefield, individually and on behalf of all others similarly situated*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all parties that are registered to receive electronic notices via electronic notification pursuant to the ECF procedures in this District on the 10th day of July, as identified on the service list below.

/s/ *Kevin H. Morse*
Kevin H. Morse

## SERVICE LIST

*Served via CM/ECF and Email*:

| | |
|---|---|
| Christopher E. Prince | Jeff Carruth |
| Lesnick Prince Pappas & Alverson LLP | Weycer, Kaplan, Pulaski & Zuber, P.C. |
| 315 W. Ninth Street, Suite 705 | 2608 Hibernia, Suite 105 |
| Los Angeles, CA 90015 | Dallas, TX 75204 |
| cprince@lesnickprince.com | jcarruth@wkpz.com |
| *Attorneys for Debtor* | *Attorneys for Debtor* |
| | |
| Katharine Clark | Marcus Salitore |
| Thompson Coburn LLP | John M. Vardeman |
| 2100 Ross Avenue, Suite 600 | Office of the U.S. Trustee |
| Dallas, TX 75201 | 110 N. College Street, Suite 300 |
| kclark@thompsoncoburn.com | Tyler, TX 75702 |
| *Subchapter V Trustee* | marc.f.salitore@usdoj.gov |
| | john.m.vardeman@usdoj.gov |